**UNITED STATES BANKRUPTCY COURT**  **DOH: 03/30/21**
**EASTERN DISTRICT OF NEW YORK**  **Time of Hearing : 10:30 AM**
----------------------------------------------------------X   Case No.  18-42302
In Re,
    **John R. M. Wilson**

        **Debtor.**
----------------------------------------------------------X

**NOTICE OF MOTION FOR FIRST AND THE FINAL APPLICATION OF DAHIYA LAW OFFICES, LLC AS ATTORNEY FOR THE DEBTOR OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERER FROM APRIL 25, 2018 TO AND INCLUDING MARCH 7, 2021**

**BEFORE THE HONORABLE ELIZABETH S. STONG,**
**UNITED STATES BANKRUPTCY JUDGE:**

Please take notice that Dahiya Law Offices, LLC (DLO) shall move the United States Bankruptcy Court, Eastern District of New York for an application for payment of professional fees (the "Application") pursuant to sections 330(a) and § 503(b)(2) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Rules"), performed by DLO as attorney for John R.M. Wilson (Wilson), the debtor, for the period commencing 'April 25, 2018 through and including March 7, 2021 (the "Compensation Period").

A Hearing has been scheduled in this matter on March 30, 2021 at 10:30 am before the presiding Judge, Honorable Elizabeth S. Stong in the United States Bankruptcy Court located at 271 Cadman Plaza East, Brooklyn, New York. All responses be filed at least a week in advance of the return date of this motion.

Dated: March 7, 2021
     New York NY

                                                                 */s/karamvirdahiya*
                                                                Dahiya Law Offices, LLC
                                                                75 Maiden Lane Suite 506
                                                                New York New York 10038
                                                                          Tel: 212 766 8000

Notice to:

John R.M Wilson
1656 Park Place
Brooklyn, NY 11233


Via Email

Marianne DeRosa
Standing Chapter 13 Trustee
100 Jericho Quadrangle
Suite 127
Jericho, NY 11753
(516) 622-1340
Fax : (516) 622-1347
Email: Derosa@ch13mdr.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X   Case No.  18-42302
In Re,
     **John R. M. Wilson**

               **Debtor.**
---------------------------------------------------------X

**FIRST AND THE FINAL APPLICATION OF DAHIYA LAW OFFICES, LLC AS ATTORNEY FOR THE DEBTOR OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED FROM APRIL 25, 2018 TO AND INCLUDING MARCH 7, 2021**

**TO THE HONORABLE ELIZABETH S. STONG,**
**UNITED STATES BANKRUPTCY JUDGE:**

Dahiya Law Offices, LLC (DLO), hereby submits its first and the final application (the "Application")  pursuant to sections 330(a) and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the Eastern  District of New York (the "Local Rules"), for interim allowance of compensation for professional services performed by DLO as attorney for John R.M. Wilson (Wilson), the debtor,  for the period commencing 'April 25, 2018 through and including March 7, 2021 (the "Compensation Period"), and for reimbursement of its actual and necessary expenses incurred during the Compensation Period, and respectfully represents:

Your Honor,

> "This Circuit's opinion is that the district court has a "responsibility to protect its own officers in such matters as fee disputes." *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir.1988)."

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 444 (2nd Cir. 1998). Indeed, this categorical declaration is the very first sentence of that opinion, which only highlights our Circuit's unequivocal position -we are the officers of this court and we need to paid for the service.

1

Respectfully Your Honor, we need our application be entertained and awarded prior to the closure/dismissal of this case. We brought value to the estate and the debtor.

### Background

1.  Around March 2005, Deslyn Johnson bought her home, 1656 Park Place, Brooklyn New York (Real Property). However, owing to financial difficulties could not afford the payments, thus had to refinance the property. Since her brother, Johnson had a steady job and a good credit history, she had her house refinanced through his name. After the refinancing, it was Ms. Johnson who continued to make the regular mortgage payment on the property.

2.  Once again around 2012, Ms. Johnson was trying to get a loan modification with Wells Fargo. She has been trying for a long time. The property was put into foreclosure at the Kings County Supreme Court. Even at the Supreme Court, the modification attempts were made. And she was not successful. For one reason or the other the bank kept denying and kept asking her for the same papers which she kept supplying. The judgment of foreclosure was announced. And an auction date was fixed. Ms. Johnson ran from pillar to post. She contacted Oumrow Singh around February 2018 and he trapped her. She took her brother John Wilson, the plaintiff to him and he convinced that they will have to transfer the property to his corporation to save it. And he will clean the debt by having the bank give more time to pay back. It was all false.

3.  On 21st February 2018, the plaintiff debtor along with his sister went to Oumrow Singh office at 199 Nassau Road in Long Island and signed on the papers which were already prepared by Oumrow Singh. Sabrina Singh, Oumrow's wife notarized it. Mr. Singh had stated that if the property is not transferred to his corporation, the plaintiff and his sister would lose everything. The plaintiff and sister signed the deed to ASCB, the corporation owned by Oumrow Singh and his wife.

2

4.    Ms. Desylyn Johnson was panicking. After the signing of the deed, she kept calling Umrow Singh for the progress on loan negotiation. He kept telling her that all is OK and they will have the house back very soon. However, Ms. Johnson was convinced that no loan modification was done as the property was scheduled to be sold on April 26, 2018. The plaintiff immediately filed the instant Chapter 13 bankruptcy to protect their property interest. Ms. Johnson personally went to the Kings County Supreme Court to find out the status of auction. The property was not listed for sale, as the undersigned had informed the bank's counsel about the bankruptcy filing.

5.    Umrow Singh did not give a penny for this transfer of deed to either the plaintiff or his sister.

6.    Plaintiff and his sister now understand that they fell prey to the "bustling" foreclosure rescue scam business set up by the defendants. Typically, in these scams, the "foreclosure rescue specialist" uses offers of refinancing to trick the homeowner into signing over her deed. The original homeowner is then evicted.

7.    Since the Real Property was transferred, a lawsuit had to be commenced and thus we prepared and commenced an adversary proceeding on May 21, 2018. On September 9, 2020, this Court entered a judgment in favor of the John Wilson the Debtor.

8.    This Fee Application relates to the adversary proceeding and most of the time entries pertains to the same. Not all hours spent on this case are billed. The undersigned met Ms. Johnson numerous times and spent hours with her—we did not bill her for talking with her.

### Jurisdiction

9.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

10. By this Motion, the undersigned request entry of an order, pursuant to sections 105(a) and 330 of the Bankruptcy Code awarding DLO professional fees of $95,480. A proposed form of order is attached hereto as **Exhibit A** (the "**Proposed Order).**

**Basis for Relief Requested**

11. The foregoing professional services performed by DLO were necessary and appropriate to further the administration of the Debtors' case and the adversary proceeding. The professional services performed by DLO were in the best interests of the Debtor and his estate. Compensation for such services as requested is commensurate with the complexity, importance, compressed timeframe and nature of the issues and tasks involved. The professional services were performed expeditiously and efficiently and the only delay in this case was owing to delays caused by the non-responsive defendants. The Real Property has been brought been wrested from unlawful hands of Oumrow Singh, the defendant.

12. Under Chapter 13, attorney's fees are allowed pursuant to § 330(a) as an administrative expense described in § 503(b)(2). With the enactment of § 330, "Congress intended to provide adequate compensation, on a par with that available in other areas of practice, to attract competent counsel to the bankruptcy specialty." *In re Commercial Consortium of California*, 135 B.R. 120, 126 (Bankr. C.D. Cal. 1991).

13. This case was about bringing the property back the Real Property to the estate—thus maximizing the value of the estate and benefiting the debtor and his family substantially. 11 U.S.C. § 330(a)(4)(B). Section 330(a)(4)(B) permits such compensation to a debtor's attorney based on the "consideration of the benefit and necessity of such services to the debtor." It is undeniable that winning the Real Property title back to the debtor.

4

14. Section 330 provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). There is also no doubt that DLO "has demonstrated skill and experience in the bankruptcy field," for award of the fees requested. 11 U.S.C. § 330(a)(3)(E).

### Disinterestedness of Dahiya Law Offices, LLC

15. Throughout the course of representation, DLO has been "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtor's estate and (b) DLO has no connection to the Debtor, her creditors, or other parties in interest except as an attorney. Although by its terms 11 U.S.C. §327 does not apply to the retention of professionals in chapter 13 cases, yet the disinterested factor is being stated here to show that the services rendered were professionally done so keeping in view the best interest of the estate and the debtor.

16. DLO performed the services for which it is seeking compensation on behalf of the Debtor and their estates, and not on behalf of any creditor, or other entity. DLO had received a payment of $8500 in this case, said payments made by Ms. Johnson.

### Fees and Expenses Incurred During Fee Period

**A.    Fees rate**

17. DLO's charged hourly rates of $550 are set at a level designed to compensate DLO fairly for the work of its attorney and paraprofessionals and to cover fixed and routine expenses. The hourly Reduced rate applied here in this is less than the hourly rates and corresponding rate structure used by DLO for other restructuring matters, as well as any litigation matters whether in the bankruptcy or other state or federal court or otherwise, regardless of whether a fee application

5

is required. The rates charged are less than what other firms are charging for similar cases—even their so called "blended rates" are higher than the charges used here. Despite the hourly rate of $600 DLO reduced its rate to $550 an hour to accommodate the Debtor's request. The total service charges are $95,480.

**B.    Fees Incurred During Fee Period**.

18.    In the ordinary course of DLO's practice, DLO maintains computerized records of the time expended to render the professional services required by the Debtors and their estates. DLO seeks approval in this Fee Application of all fees and expenses incurred during the Fee Period on a final basis. The undersigned met the Debtor several times in and out of office for hours over many days. Also, there were lot of telephonic talks, indeed a lot of these meetings or telephonic talks are not being billed. Even those unbilled times were spent in discussing and sharing the legal issues and or the course of case and strategies. The fees incurred herein are: $95.480. The fees demand is primarily related to the work done on the adversary proceeding.

**C.  Expenses Incurred During Fee Period**.

19.    In the ordinary course of DLO's practice DLO maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which no reimbursement is sought for now. DLO does not charge any expense for standard duplication in its office. There were expenses incurred are those related to Pacer, mailing or payment of court fees., however, DLO is waiving all expenses.

**<u>The fees were reasonable</u>**

**The Applicable Principles For Determining a Reasonable Award of Fees and Expenses**

6

20. "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). To determine what is "fair and rewarding" remuneration for attorneys, the Second Circuit has set the "presumptively reasonable fee" standard. *Arbor Hill Concerned Citizens NeighborhoodAss'n v. County of Albany*, 522 F.3d 182, 189 (2nd Cir. 2008); *Proctor v. PMR Law Group*, 2010 WL 4174723 (W.D.N.Y. Oct. 25, 2010).

> Using the presumptively reasonable fee standard, the district court must engage in a four-step process: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award. *See Adorno v. Port Authority of New York and New Jersey*, 685 F.Supp.2d 507, 511 (S.D.N.Y. 2010); *McDow v. Rosado*, 657 F.Supp.2d 463, 467 (S.D.N.Y. 2009).

*Silver v. Law Offices Howard Lee Schiff, P.C.*, 2010 WL 5140851 (D. Conn. Dec. 16, 2010). The relevant factors for an "appropriate adjustment" of the lodestar "include, but are not limited to, the attorney's customary hourly rate, the complexity and difficulty of the case, the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side), the experience, reputation and ability of the attorneys, and the preclusion of employment by the attorney due to acceptance of the case," *Brady v. Wal-Mart Stores, Inc.*, 2010 WL 4392566 (E.D.N.Y. Oct. 29, 2010). [1]

---

[1] The Second Circuit has identified the following non-exclusive factors for this purpose:

> (1) counsel's time and labor; (2) the litigation's magnitude and complexity; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*McDaniel v. County of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010) (*quoting Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

21. The time records posted herein with the time sheet reflects detailed entries. There is no redaction—there is no reflection of the privileged communication. The information provided in the time log is not fissured or challenged by opaqueness. While the fee application should be buttressed by time-records, "counsel is not required to record in great detail how each minute of [his] time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Silver*, 2010 WL 5140851 (D. Conn. Dec. 16, 2010). *Accord, Siracuse v. Program for the Dev. of Human Potential*, 2012 WL 1624291 (E.D.N.Y. Apr. 30, 2012). And that has been properly recorded. Also, docket entries of the case with the filings reflects the work product. And the Court is very familiar with the issues and challenges of the case; thus the entries are readily ascertainable.

### The Rates Charged Are Reasonable

22. DLO's fee rate for this Debtor is $550 an hour. "A reasonable starting point for determining the hourly rate for purposes of a [presumptively reasonable fee] calculation is the attorney's customary rate." *Parrish v. Sollecito,* 280 F.Supp.2d 145, 169–170 (S.D.N.Y.2003); *see also Meriwether v. Coughlin,* 727 F.Supp. 823, 831 (S.D.N.Y.1989); *Reid v. State of New York,* 584 F.Supp. 461 (S.D.N.Y.1984)

23. The hourly rates of $550/hr used in making a fee award should be "what a reasonable, paying client would be willing to pay." *Malletier v. Apex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 359 (S.D.N.Y. 2010) (citing *Arbor Hill*). The reasonableness of the rate sought is measured by the prevailing market rate for lawyers in the district in which the ruling court sits. *Polk v. New York State Dep't of Corr. Serv's*., 722 F.2d 23, 25 (2d Cir.1983). Thus, the fee-setting jurisprudence is meant to "approximate" the "free market." *Arbor Hill*, at 184 ("Our fee-setting jurisprudence has become needlessly confused—it has come untethered from the free market it is meant to

approximate."). Hourly rates "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). The undersigned was retained in 2018 and now the billing rate of the DLO is $700 an hour. Further, "[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). *Accord, Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006); *Lochren v. County of Suffolk*, 344 F. App'x. 706, 709 (2d Cir. 2009).

24. The court is well aware of the fees charged in such cases in the Eastern District of New York. The court may "rely on [the court's] own knowledge of comparable rates" charged by lawyers in the community, *Morris v. Eversley*, 343 F.Supp.2d 234, 245 (S.D.N.Y. 2004) (*citing Ramirez v. New York City Off-Track Betting Corp.* ., 1997 WL 160369, at *2 (S.D.N.Y. Apr.3, 1997)), "as well as on evidence submitted by the parties." *Stirrat v Ace Audio/Visual, Inc.*, 2007 WL 2229993, at *2 (E.D.N.Y. July 31, 2007) (*citing Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005)). *Accord, Dweck v Amadi*, 2012 WL 3020029 (S.D.N.Y. July 6, 2012), *report and recommendation adopted*, 2012 WL 3024185 (S.D.N.Y. July 24, 2012).

25. Under these standards, the hourly rates sought are clearly reasonable. The undersigned, a Harvard Law graduate, with intense academic record, has twenty years of experience in complex litigation and bankruptcy law in several jurisdictions in the United States and abroad, seeks an hourly rate of $550. Also, these rates are less than those paid by regular paying clients. *See In re Telik, Inc. Sec. Litig.*,576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (holding the best indicator of the "market rate" in the New York are . . . the rates charged by New York firms . . . Viewed in light of that market barometer, . . . counsel's rates are entirely reasonable). This Court could take a "judicial notice of the rates awarded in prior cases and the court's own familiarity with

the rates prevailing in the district." *Farbotko v. Clinton Cty. of New York,* 433 F.3d 204, 209 (2d Cir. 2005) (citing *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.,* 407 F.3d 65, 82 (2d Cir.2005) and *Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir.1987)). The undersigned counsel rate, voluntary entered with the Debtor, is less than those charged by the peers with this level of experience, and even less than the assuaged blended rates of firms. Thus, "[t]he presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill*, 493 F.3d at 185, 190). The actual billing rate of the undersigned ranges from $550 to $700 an hour, depending on the complexity of the situation. See *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) ("the attorney's actual billing rate paid by his client is 'presumptively appropriate' to use as the market rate) (quoting *Peo Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1311 (7th Cir. 1996)). This billing rate subsumes only the attorney's core time spent on core legal issues and execution thereof. As suggested, *supra,* the undersigned has spent days talking, researching etc. about the case, however, the estate is not being billed for a lot of those times or items. Nor is there billing for the main chapter 13 case barring the motion to re-impose stay.

<strong>The Fees Sought is Fair and Reasonable</strong>

A. *The Time Spent Was Reasonable*

26.     The Debtors' counsel seeks compensation for a total of time exceeding 214 hours spent by one attorney on the case for the Fees Period. To determine whether the hours should be compensated, the Court should

> examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case . . . In

10

> making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.

*DiFilippo v. Morizio*, 759 F. 2d 231, 235-36 (2nd Cir. 1985). The time spent by the undersigned counsel is a product of the scrupulously kept contemporaneous, separate, time-records electronically as well as those compositely put in time records from the marginalia and annotations of different tasks handled over the period of fees period. "Thus, "where the record is substantial, it is permissible to file an application in the form of an affidavit, appending in computer printout form a copy of the relevant portions of the contemporaneous time records."). *Gucci Am., Inc. v. Rebecca Gold Enterprises, Inc.*, 89 CIV. 4736 (BN), 1993 WL 88270, at *3 (S.D.N.Y. Mar. 23, 1993). A party seeking fees may transfer information from "contemporaneous records [to] a form convenient for the Court"—submission of the actual physical records is not required. *Lenihan v. City of New York*, 640 F. Supp. 822, 824 (S.D.N.Y. 1986). The ultimate purpose of any submission is to permit the district court to evaluate whether the hours were "usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cit. 1994). Also the court is requested to take judicial notice of the filings in this case. Along with the time records are the filings- "These records describe with adequate particularity the tasks performed." *Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*, 2010 WL 3290965 (S.D.N.Y. Aug. 11, 2010).

27.     The undersigned performed those services, "what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re Ames Dep't Stores, Inc.,* 76 F.3d 66, 72 (2d Cir.1996) (citing *In re Taxman Clothing Co.,* 49 F.3d 310, 315 (7th Cir.1995) (Posner, C.J.)); *accord In re Drexel Burnham Lambert Group, Inc.,* 133 B.R. 13, 23 (Bankr.S.D.N.Y.1991). Thus we had commenced an adversary proceeding to bring back the property to the debtor. Thus, the Court is requested to consider "the complexity and difficulty of the case; ... the resources

required to prosecute the case effectively ..., the timing demands of the case, ... and other returns (such as reputation, etc.) that an attorney might expect from the representation." *Arbor Hill,* 522 F.3d at 184 (citing the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).

28.     Congress enacted section 330 of the Bankruptcy Code to liberalize the practice of granting the allowance of compensation to professionals in bankruptcy cases in order to ensure that "attorneys be reasonably compensated and that future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation."  *In re Ames Dep't Stores, Inc.,* 76 F.3d 66 72 (2d Cir. 1996) (quoting *In re UNR Indus., Inc.,* 986 F.2d 207, 208-09 (7th Cir. 1993)).

### Time spent on the preparation of Application compensable

29.    The time expended also includes the time spent in this fee application up to the time of drafting this memo. *Colbert v. Furumoto Realty, Inc.*, 144 F.Supp.2d 251, 262 (S.D.N.Y. 2001) ([P]arty is entitled to reimbursement for the time expended in the preparation of the fee application."); *Natural Res. Def. Council, Inc. v. Fox*, 129 F.Supp.2d 666, 675 (S.D.N.Y. 2001) ("[T]he fee application is a necessary part of the award of attorney's fees"); *LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510, 526-27 (S.D.N.Y. 2010) (same). Also it is expressly provided for by the bankruptcy code. "A § 327(a) professional's preparation of a fee application is best understood as a "servic[e] rendered" to the estate administrator under § 330(a)(1)," *Baker Botts L.L.P. v. ASARCO LLC,* 135 S. Ct. 2158, 2167, 192 L. Ed. 2d 208 (2015), thus, "compensable." Id.  We are not asking for the time entered for these hours now, but reserve the right to demand the same, if we feel it is necessary to mitigate the damages and if fees request becomes a contentious matter.

**No Prior Request Made**

30. No prior application for the relief requested has been made to this or any other court.

## **CONCLUSION**

For the foregoing reasons, Counsel respectfully requests that this Court grant the requested award of $ 95,480.00 towards attorneys' fees.

Dated: New York NY
       June 19, 2019                             DAHIYA LAW OFFICES, LLC

/S/*karamvirdahiya*
By: Karamvir Dahiya, Esq.
75 Maiden Lane Suite 506
New York NY 10038
Tel: 212 766 800